Good morning, your honors. Dallas Sacker on behalf of the appellant David Vigil. I guess this is knife day here at the court of appeal. I'd like to reserve two of my minutes for rebuttal, please. We've got two issues today. We've got the procedural issue of whether the rule of Strickland v. Washington applies for purposes to a noncapital sentencing case. And then secondly, the substantive issue of whether there was a Strickland violation in this case. On the first question, we would have to go on bank, right? I'm sorry. On the first question, we would have to go on bank. I don't think so, your honor. It's my opinion that this court, like all the citizens of the United States, are bound by the express holdings of the U.S. Supreme Court.    A Glover violation. Well, what case would tell us that we were wrong in those prior decisions? Glover would tell you you're wrong. I mean, in Glover, in 2001. Yeah, but our cases are post-Glover cases. That's going to make it very difficult to do that. I understand that. Do you have anything more recent? I do not. I can see that this Court has a difficult problem in that its prior cases do say that the rule of Strickland does not apply to a non-capital. Well, it doesn't say that. It says there's no clearly established Supreme Court law that it does. That's exactly what they say. However, my point is that Glover so clearly applies Strickland that regardless of what these prior cases may have said, it just seems inconceivable to me that anyone could read Glover and say they are not applying the rule of Strickland in a non-capital context. Is there any argument that were those cases dealing with underlying cases that were decided before Glover? Yes. Well, I've made that argument in the alternative. We've got the two cases. We've got Davis v. Griegas. And we've got the two cases that were not about that character. Right. The opinion in Davis specifically says that the State sentencing hearing was held in 1998. Glover comes in 2001. The Coopersmith opinion does not expressly say when the State proceedings were, but it does say that the crime was committed in 1987. But we could find out. I'm sorry? We could find out. Yes. There's a very reasonable inference that that proceeding occurred before 2001. So that's one way out of the conundrum. But, again, I mean, in 2001, the U.S. Supreme Court expressly applies prong 2 of Strickland and Glover. Logically, prong 1 cannot apply unless prong 2 applies. So I understand the Court's difficulty, but that is my position. Turn to the other side. If it doesn't apply, then the rest of your argument kind of goes up in smoke. That's absolutely correct. I have to have some clearly established federal law, and I believe that Strickland and Glover is a clearly established federal law. Turning to the merits, as the Court will recall, the probation report advises the sentencing judge that the victim says the defendant put a knife to her as he threatened to kill her. Defense counsel had contrary evidence. His investigator had spoken to the victim, and she said, a sharp object was put to my side, but I did not see what it was. Counsel makes what quite frankly is an idiotic decision in that he does not bring that to the Court's attention, and that's for two reasons. Number one, quite obviously, the character of the present offense is entirely different if no knife is used. I mean, the act of putting a knife to somebody's side while threatening to kill them. Kagan. But, in fact, she didn't say no knife was used. What she said was she didn't know. Now, why isn't that sufficiently frightening? It could have been. As from her point of view, for all she knew, it could have been a knife. Oh, there's no question the crime is frightening. But the question is, when the sentencing judge, and he's deciding is he going to impose a 25-to-life sentence or a six-year sentence, the nature of the crime is materially different if a knife is used and if a knife isn't used. But the crime was threat, right? Correct. And he was trying to make – it appears that he must have been trying to make her think it was a knife, whether it was a knife or not, because he was – or at least that must be what the jury found, because what they found was that she threatened her with great bodily injury. There was no jury, Your Honor. All right. Right. But you're right, of course. But the point is that if she had said, well, I knew all along it wasn't a knife, that would be one thing. But that isn't what she said. Well, what she told the defense investigator is that a sharp object was put to her side, but she doesn't know what it was. The defendant, when he speaks to the probation officer, denies that he used a knife. But because it's a threat, what matters is her perception and his perception of her perception. So whether it was a knife or not, if he meant to make her think it was a knife and she thought it could be a knife, we're in the same place. Let me try it a different way. Okay. The judge, in determining whether or not he's going to impose a life sentence, has to consider three factors. One of those factors is the nature of the present offense. I would readily concede if a man goes up to a woman and puts a knife to her side and threatens to kill her, the nature of that offense is such that the judge should not exercise sentencing discretion to give less than the life sentence. And this sentencing judge believed that those were the facts. He had no information to the contrary. Let's suppose that he'd been wearing a trench coat and he walked up to her with his finger in his pocket, imitating a gun, and said, you know, follow me, get in the car, I'll blow your head off. Now, does the fact that he doesn't, in fact, have a gun play any significant role in that? Again, Your Honor, the critical fact is that the sentencing judge was unaware of the true facts. He believed the only evidence was that a knife was used. Let's assume the evidence was that it was a sharp object instead of a knife. How would that change it? Well, according to the victim, for all she knew, it was a pen. Now, a pen is not an inherently dangerous object. But isn't the nature of the threat, the fear that's instilled in the victim, whether it's a sharp object or a knife? Isn't that the idea of that particular section? Again, Your Honor, I'm not debating the seriousness of the crime. A threat to kill somebody is a serious crime. But the manner in which that offense is committed is a highly material thing. You're essentially saying that the judge, even if it wasn't material to the offense, the judge may have cared a lot about whether he had the knife or didn't have the knife. Very much so. And I think that's an entirely reasonable proposition. Moreover, in this case, the judge was offended by what he believed was the defendant's lie to the probation officer. He tells the probation officer, I didn't use a knife. So the judge says, and he uses the word probably, you know, you intentionally broke the window of the woman's house. So this is a case where the judge himself is telling us the significance of this piece of evidence. I'll reserve my remarks. Thank you very much. Good morning. Jill Thayer from the Attorney General's Office on behalf of Respondent. First, I'll just say that I do believe this Court is bound by its prior decisions, Davis and Coopersmith. Are they flat wrong? Pardon? Are they flat wrong?  No, they're not flat wrong. Well, Blubber was before the events in this case, and it clearly, clearly applied Strickland to non-capital sentencing. No, it did not. Well, okay. If you want to say it applied, I think that's stretching it. But the issue isn't whether it inferentially applied. The question is whether — I'm sorry. What do you mean by inferentially applied? It directly applied. It made a ruling about the fact that in a sentencing circumstance, any degree of impact on the crime was part of a Strickland determination. That's a holding. It applied. It applied it, but it also made a holding that wouldn't make one little sense if Strickland didn't apply. It did not squarely address the standard to use in non-capital sentencing proceedings. Okay. It said that if it — if there's — in terms of prejudice, if there's absolutely any impact on the amount of incarceration, that's prejudice. It's directly addressed. Wright v. Van Patten says they need to squarely address an issue. In Glover, the government conceded the prejudice issue. Glover also arose on — excuse me? They conceded it. They conceded the issue. But then the court could have said go home, but they didn't say that. They decided it anyway. They decided the issue, but the government conceded the prejudice issue. And they did raise some other issues, and the U.S. Supreme Court specifically said we are not going to reach those other issues. We are only discussing the fact — it's a two-page opinion that says, okay, 6 to 21 months equals prejudice. But had they thought the concession was adequate, they didn't have to decide anything. All they — Just a minute. They obviously thought it was important enough that even though it was conceded, they decided it. Okay. In order for this Court to be able to apply Glover, the U.S. Supreme Court needs to squarely address the issue. It's dicta. But dicta is not good enough. They need to squarely address what is — Can you tell me why it's dicta? The whole opinion is dicta? No. The opinion is not dicta, but the standard is how about the prong, the performance prong? They reached nothing about the performance prong. They explicitly refused to address the performance prong. And Strickland specifically said we need not consider the role of counsel in an ordinary sentencing and hence may require a different approach to the definition of constitutionally ineffective — effective assistance. That's at 686. Counsel, one difference between Glover and Strickland is Glover is a direct appeal. Glover is not an AEDPA case. That's correct. That's also correct. We don't really have a case in which the Court has applied Strickland in a state sentencing context. No, we do not. So Glover was a direct appeal where the Supremes are exercising their supervisory authority. I didn't say they were doing that, did I? Excuse me? They did not say that's what they were doing. It's a direct appeal. But they did say they were exercising their supervisory authority. They said we must decide whether this would be precious under Strickland v. Washington. It's a direct appeal. Let me go back on to the next issue. I think I'd also mention that Davis and Coopersmith used the present tense when they say in both cases. Moreover — and this is Davis from 2006 — since Strickland, the Supreme Court has not delineated a standard which should apply to ineffective assistance of counsel claims in noncapital sentencing cases. That's what this Court said in 2006. There's no asterisk. There's no footnote that says since then in Glover they have nothing. And that's five years after Glover was decided. And Coopersmith said the same language, basically. Since Strickland, the Supreme Court has not decided what standard should apply to ineffective assistance of counsel claims in the noncapital sentencing context. That's Coopersmith, 2005, page 1244. Four years after Glover is decided. Okay. I'm going to turn on to the next issue, which is even if Strickland did apply, which it doesn't, under AEDPA there's no relief. There's no relief. The fact we're even arguing about whether the possibility that it was a knife or the theoretically possibility that it was something else means there's no relief under AEDPA. The State court's prejudice decision gets deference from this Court based on everything the Supreme Court has said. Deference, it's not unreasonable. The sentencing judge considered the entire process a nightmare from the victim's perspective. Her perspective was there was a sharp object which she thought was a knife. Now, what she thought might be a knife. Might be a knife. So the argument that really he had a pen, that's not the argument. She thought it was a sharp object. And she even suggested, she said, might have been one of her steak knives. And that was stuck in her stomach. And then it went on and on and on. And I'll also say that the court was not concerned just with the lie about the knife. He also said to the probation officer he denied ever getting violent with her. He also said he didn't break the glass. So this, it was a lengthy incident that occurred. And he lied to the probation officer about every piece of that incident. And the trial court rightfully used that and said, you know, I'm not going to give you any leniency. You're not really asking for any help. You're not, you're just denying everything about the crime. Even though he did plead guilty. Also, the trial court spent two pages in the record discussing his terrible record. And said, you know, even if the crime, there was something about the crime where I could exercise discretion. And the court didn't even make it sound like it was an easy case. The sentence, the presumptive sentence is 25 years to life. He didn't come anywhere close. The court said it would be an abuse of discretion to give you any kind of a break. So in this case, the state court, and we have to look at it from the state court, they weren't utterly ridiculous in finding that there was no prejudice. And then the only other point I want to make is petitioner keeps complaining about how stupid the defense attorney was. Well, you can't assume that the defense attorney didn't make a tactical decision. There's a strong presumption that the attorney did make a tactical decision. There's information in the record that he did make a tactical decision. It's considered as of the time he made the decision. And it's, it can be based on information he gets from his client. So the fact that the petitioner said, well, we're not getting along, we're not speaking anymore. He's allowed to consider that. And that's all based on Strickland. All Strickland. So even if this Court does want to jump past Davis and Coopersmith, there's no getting past AEDPA in this case. Okay. Thank you very much. Mr. Thatcher. Back to the whole Glover-Davis-Strickland dispute. I think what's interesting, if you look at the Davis opinion, all three judges concur, but Judge Graber writes a concurring opinion where she takes the point head-on, agrees with the position that I'm presenting, that in fact Glover is. But that cuts against you on the question of whether the case is going to be distinguished on timing, doesn't it? Well, that was the point I was getting to. The other two judges in the lead opinion say not a word about Glover. And I think one reasonable way to understand that is because the Davis sentencing hearing was held in 1998, Glover could not be clearly established Federal law in that case because the State proceedings predated Glover. Also, I mean, couldn't one argue, although it may be the relevant provision here and maybe that's good enough, that Glover-Strickland left open the question whether the same standards apply to non-capital sentencing. Glover certainly seems to say that the prejudice prong applies the same way. It doesn't necessarily say that the representational prong applies the same way. It just doesn't address that. I agree with that, Your Honor, because that would be completely illogical. Well, there has to be a prong. I mean, it just may be articulated differently. Maybe it would be looser. In sentencing, it's not, it's a more egregious. I mean, you can imagine that you could have a standard that was somewhat different, but the same prejudice. I don't agree with that, Your Honor, because Strickland is simply a general principle. The Supreme Court has said this. I've cited this in my brief in the Williams v. Taylor case, that Strickland is a rule of general application. My, you know, honestly, I certainly was shocked by this. I had no idea this was going on. I certainly so assumed. But Strickland did leave something open, and they didn't think it was such a foregone conclusion that it was all the same, all spinach. Let me just make this last point. Logically, the Supreme Court cannot make a finding of prejudice under prong two without implicitly finding that prong one must apply. You cannot have prejudice unless you have first under prong one. No, but wait a minute. Yes, there has to be a prong one, but it doesn't have to be the same prong one, does it? It is just as clear as day to me. That was the Court's intention in Glover. And I say that not based just on Glover, but the Court's entire jurisprudence in applying Strickland. They have never varied from the prong one test stated in Strickland. And they have applied it in all manner of cases to all manner of issues, as has this court, as has every other appellate court in the United States. The state court, actually, in this case, the Santa Clara Superior Court, didn't they actually apply Strickland? Whether or not it should have applied or not, they actually applied it, didn't they? Absolutely. And why was their application of it, in your opinion, an unreasonable application of federal law? It's an unreasonable application because the last reasoned opinion, which was written by the state superior court judge adjudicating the habeas petition. Right. He ignored the most salient part of the record. The sentencing judge used the word probably. He said, I probably would have given a lesser sentence, but for the defendant's apparent lie that he did not use a knife, he did not break the window. The defense counsel fails to bring to his attention there is, in fact, corroboration for the statement that the defendant made to the probation office. The victim would say, in fact, she didn't know if there was a knife or not. In fact, there was – there's this letter in the record, and I guess it would help me to know exactly what it is, and then argument will be done, where the defense lawyer, who seemed pretty competent otherwise, I mean, just in terms of reading what she did, explained why she didn't do this. And she had reasons. Why isn't that record sufficient? The letter. The letter is a red herring. The letter talks about why he did not call the victim to testify at the sentencing hearing. That has never been our – that has never been our claim. Our claim is that under State law, they could have introduced the victim's extrajudicial statement to the defense investigator. But go one step further. We have a declaration in the record from the victim who says, had I been called to testify, I would have come to testify. I would have repeated my statement that I don't know what object he held to me. One last point about this is something the Attorney General said, a tactical purpose in not summoning the victim. The record shows defense counsel had not spoken to the victim for eight months. And you can scarcely make a rational judgment whether you're going to summon somebody to court or not if you haven't been in touch with them for eight months. Thank you very much. Thank you very much. Thank you both for your argument. And another interesting case. A case called Vigil v. McDonald is submitted.
judges: Whelan, Berzon, Bybee